```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
BERNARD H. COHEN,                          :

                      Plaintiff,           :    ECF CASE

         - against -                       :    05 Civ. 3633 (WCC)

MIDDLETOWN ENLARGED CITY SCHOOL            :
DISTRICT, ROBIN MARKOVITZ, former Board
of Education President, PAUL JOHNSON,      :    OPINION
former Board of Education President,            AND ORDER
VINCENT CRESCENZO, Board of Education      :
President, ROBERT SIGLER, former
Superintendent of Schools, PATRICIA        :
McLEOD, former Superintendent of Schools,
and KENNETH EASTWOOD, Superintendent of    :
Schools, sued in their individual
capacities,                                :

                      Defendants.          :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

            BERGSTEIN & ULLRICH, LLP
            **Attorneys for Plaintiff**
            15 Railroad Avenue
            Chester, New York 10918

CHRISTOPHER D. WATKINS, ESQ.

    Of Counsel

            LAMB & BARNOSKY, LLP
            **Attorneys for Defendants**
            534 Broadhollow Road, Ste. 210
            P.O. Box 9034
            Melville, New York 11747-9034

SHARON N. BERLIN, ESQ.
MICHELLE S. FELDMAN, ESQ.
DONNA A. CANFIELD, ESQ.

    Of Counsel

            **Copies E-Mailed to Counsel of Record**

**Conner, Sr. D.J.:**

Plaintiff Bernard H. Cohen brings the present action pursuant to 42 U.S.C. § 1983 against defendants Middletown Enlarged City School District (the "District"), Robin Markovits ("Markovits"),[1] Paul Johnson ("Johnson"),[2] Vincent Crescenzo ("Crescenzo"),[3] Robert Sigler ("Sigler"),[4] Patricia McLeod ("McLeod")[5] and Kenneth Eastwood ("Eastwood")[6] (collectively, "defendants"), seeking damages resulting from his allegedly unlawful termination. Plaintiff previously filed a motion to compel defendants to produce certain documents relating to the District's investigation of plaintiff, which resulted in the District's decision to initiate disciplinary charges against him and, ultimately, in his termination. In the Opinion and Order dated January 8, 2007, this Court held, *inter alia*, that defendants must produce document nos. 1, 2, 9, 21, 27 and 28[7]

---

[1] Markovits was the president of the District's Board of Education from June 2002 to June 2004. (*See* Am. Complt. ¶ 4.)

[2] Johnson was the president of the District's Board of Education prior to June 2002, after which he served as a Board member for one year. (*See* Am. Complt. ¶ 5.)

[3] Crescenzo has served as the president of the District's Board of Education from June 2004 to the present. (*See* Am. Complt. ¶ 6.)

[4] Sigler was the District's Superintendent of Schools from 1994 to January 8, 2003, when he was arrested and subsequently convicted on charges of child molestation. (*See* Am. Complt. ¶ 7.)

[5] McLeod was Acting Superintendent of Schools from January 9, 2003 to February 2005, when she resigned. At all prior relevant times, she was the District's Assistant Superintendent for Instruction. (*See* Am. Complt. ¶ 8.)

[6] Eastwood has served as the District's Superintendent of Schools from July 1, 2004 to the present. (*See* Am. Complt. ¶ 9.)

[7] *See* Opinion and Order, dated January 8, 2007 (identifying documents numerically in the order they appeared on defendants' privilege log.)

to plaintiff or, in the alternative, to this Court for *in camera* inspection, on or before February 2, 2007, because defendants' privilege log failed to sufficiently describe the documents alleged to be protected under the attorney-client privilege and/or attorney-work product. On February 1, 2007, defendants produced the documents to this Court for *in camera* review. We have since reviewed the documents and, for the reasons that follow, plaintiff's motion to compel defendants to produce document nos. 1, 2, 9, 21, 27 and 28 is denied.

## BACKGROUND

This litigation arises from the highly publicized incident involving the molestation of an eighth-grade student attending Twin Towers Middle School by Sigler, the former Superintendent of Schools, who ultimately pled guilty to child molestation charges and is currently serving a prison sentence. (*See* Defs. Mem. Opp. Mot. Compel, Ex. 6.) In particular, it involves plaintiff's alleged course of action to bring an end to Sigler's contact with the student, his subsequent public criticism of the District's handling of the matter and the District's motivation for ultimately terminating plaintiff. The facts relevant to this lawsuit are set forth in detail in our prior Opinion and Order, dated January 8, 2007, familiarity with which is presumed. The only issue before the Court is defendants' obligation to produce document nos. 1, 2, 9, 21, 27 and 28.

## DISCUSSION

I.   **Attorney-Client Privilege**

As explained in our prior Opinion and Order, the attorney-client privilege is the oldest recognized testimonial privilege in Anglo-American jurisprudence, dating back to the 1600s, and

is regarded as a bastion of the attorney-client relationship. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998); *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); EDNA SELAN EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK-PRODUCT DOCTRINE, 2 (4th ed. 2001). Indeed, only when communications between an attorney and his client are guaranteed confidentiality can an attorney provide informed legal advice. *See* EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE, at 2; *see also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."); *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 73 (S.D.N.Y. 2006) ("The attorney-client privilege functions 'to encourage full and frank communications between attorneys and their clients.'") (quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989)). Courts must define the contours of the privilege to foster open discussion between attorneys and their clients while recognizing the "tension with the proposition that the adversary process is designed to ferret out the truth and that any secrecy accorded by the law must be strictly construed lest the secrecy thwart the search for truth." EPSTEIN, THE ATTORNEY-CLIENT PRIVILEGE, at 12; *see also In re Grand Jury Investigation, United States v. Doe*, 399 F.3d 527, 531 (2d Cir. 2005). To this end, the party asserting the privilege "must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *see also Bell v. Pfizer Inc.*, No. 03 CV 9945, 2006 WL 2529762, at *4 (S.D.N.Y. Aug. 31, 2006) (same); *Marsh v. Safir*, No. 99 Civ. 8605, 2000 WL 460580, at *8 (S.D.N.Y. Apr.

20, 2000) (same).

In the present case, document no. 1 is an email exchange between Richard Zuckerman ("Zuckerman"), counsel to the District, and a District representative in which the District sought and received legal advice from Zuckerman and, accordingly, it is protected by the attorney-client privilege. Document no. 2 contains a description of an incident written by McLeod at the behest of Zuckerman and then sent to Zuckerman for purposes of seeking legal advice, and it is also protected from discovery.[8] Document no. 9 is a communication between Zuckerman and Timothy Conway ("Conway"), Deputy Superintendent of Schools, in which Conway sought legal advice from Zuckerman, and it is therefore protected by the attorney-client privilege. *See, e.g.*, *Long v. Marubeni Am. Corp.*, No. 05 Civ. 639, 2006 WL 2998671, at *2 (S.D.N.Y. Oct. 19, 2006). ("The privilege, designed to facilitate openness and full disclosure between the attorney and the client, shields from discovery advice given by the attorney *as well as communications from the client to the attorney*.") (emphasis added) (citing *Upjohn*, 449 U.S. 383). Document 21 is also protected by the attorney-client privilege because it contains a communication between McLeod and Zuckerman containing legal advice that Zuckerman previously provided to McLeod and information provided by McLeod to Zuckerman for purposes of securing future legal advice. Lastly, document nos. 27 and 28 are protected because they contain communications between Sharon Berlin ("Berlin"), legal

---

[8] Document no. 2 was created by McLeod at Zuckerman's request the day after plaintiff publicly stated that he believed the District was launching "a campaign of retaliation against him because of his refusal to go along with [the District's] cover-up." (*See* Am. Complt. ¶ 38.) Thus, it was clearly made in anticipation of litigation and is also protected by the attorney work product doctrine. *See, e.g.*, *In re Grand Jury Subpoenas, The Mercator Corp. v. United States*, 318 F.3d 379, 383 (2d Cir. 2003) ("The attorney work product, now codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure . . . , provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial.").

counsel to the District, and Conway in which Conway sought and received legal advice from Berlin. Accordingly, plaintiff's motion to compel defendants to produce document nos. 1, 2, 9, 21, 27 and 28 is denied.

## **CONCLUSION**

For the reasons stated above, the motion of plaintiff Bernard H. Cohen to compel production of documents nos. 1, 2, 9, 21, 27 and 28 from defendants is denied.

SO ORDERED.

Dated: White Plains, NY
February 28, 2007

*William C. Conner*
Senior United States District Judge